ALMA TILLOTSON, appellee, v. DONALD L. SCHWARCK et ux., appellants.

No. 51960.

June 14, 1966.

Cartwright, Druker, Ryden & Fagg, of Marshalltown, for appellants.

Bateson & Dunn, of Eldora, and Whitesell Law Firm, of Iowa Falls, for appellee.

Becker, J.—This is an action for damages by pedestrian plaintiff against motorist defendant. On trial verdict was for plaintiff. Defendant appeals.

Plaintiff, age 70, lived and worked on a farm in Hardin County. The farm is located on a 28-foot wide east-west county road, 24 feet of which is the traveled way. The mailbox is located on the north side and across the road from the residence. The road slopes up to the crest of a hill approximately 300 feet west of the mailbox.

On the morning of April 24, 1964, plaintiff was crossing to the mailbox when struck by defendant's car. Plaintiff testified that she came out of the farmhouse to the west edge of a drive directly across the road from the mailbox. She could see west to the top of the hill, some 312 feet. Plaintiff looked both ways, saw no one coming and started across the road. When Mrs. Tillotson got into the near, or south, lane about halfway, she heard a car coming from the west. She looked in that direction but could not see a car coming. Nor did she see any dust. Mrs. Tillotson said that she had lived and worked at this farm for seven years; was familiar with the way cars came over the crest of the hill to the west; it did not take them very long to get down to the vicinity of the mailbox after coming over the crest of the hill.

When she heard the car coming, plaintiff realized she was in danger. She continued across the road, hurrying to get into the north or left lane of the car she heard coming. She did not hurry

so fast when she got over to the north side of the road because she thought she was out of the way. When she was over on the north side of the road she looked west and saw the car an instant before it struck her. Plaintiff testified that if she had not slowed down because she thought she was out of danger, she still would have been in the road.

Plaintiff's only other liability witness was the deputy sheriff. He testified that he came to the scene that day in answer to an accident call. He topped the same crest at about 40 or 50 miles per hour. He had been looking for the accident as he did not know its exact location. He stopped his car in front of the woman on the road. He did not lose control of his car.

The deputy found that defendant's car had laid down 180 feet of skid marks before stopping. The marks started on the south or right side of the road curving to the north to the point where the car was stopped. The front end of the car was eight to ten feet east of the mailbox with its left fender about three feet from the grass on the north shoulder. Plaintiff was lying in the road about six or eight feet in front of the car.

Defendant's only evidence consisted of identification of photographs of the scene of the accident taken a year later. Such further factual references as may be necessary will be noticed in the following divisions.

I. Defendant's first assignment of error is directed to the court's failure to direct a verdict on the grounds that plaintiff was guilty of contributory negligence as a matter of law.

█ █ In considering the propriety of defendant's motion to direct, plaintiff's evidence must be given the most favorable construction it will reasonably bear. Generally questions of contributory negligence are for the jury; only in exceptional cases may they be decided as a matter of law. Even where the facts are not in dispute, if reasonable minds may draw different inferences from them, a jury question is generated. Rules of Civil Procedure, 344(f).

Defendant argues that under the evidence here plaintiff either did not look before crossing the road, or, if she did look, failed to see what had to be in plain sight. In either event she would be guilty of contributory negligence. Jacobson v. Aldrich,

246 Iowa 1160, 68 N.W.2d 733; Hewitt v. Ogle, 219 Iowa 46, 256 N.W. 755; Sheridan v. Limbrecht, 205 Iowa 573, 218 N.W. 278. The first two of the foregoing cases are intersection collision cases between automobiles. The third involves a pedestrian and an automobile traveling at a known speed of 15 miles per hour. None is factually comparable.

The burden of defendant's argument in this regard is since plaintiff herself testified that the car had not come over the crest when she was in the middle of the south lane, she was struck before she reached the north edge of the traveled way, she could only have walked about 12 feet between the time she first heard the car and the time she was struck. Defendant postulates that plaintiff would walk about three miles per hour and that defendant's car could not have covered the 312 feet from the crest of the hill to the point of impact while plaintiff was walking 12 feet.

This argument assumes that the relative speeds can be ascertained with reasonable certainty. Plaintiff, who stated she was hurrying, did not necessarily reach a speed of three miles an hour. This was a gravel road. Plaintiff was a 70-year-old woman. See Lawlor v. Gaylord, 233 Iowa 834, 10 N.W.2d 531. The point of impact is not clearly shown. Plaintiff could have traveled somewhat more than 12 feet while defendant's car was coming, placing her closer to the north edge of the road but still on the traveled portion. It was the left center of defendant's car that showed the dent mark.

We know nothing of the speed of defendant's car except as it can be reconstructed from skid marks, and the somewhat similar experience of the deputy sheriff. Plaintiff's evidence was necessarily circumstantial. Defendant elected not to take the stand. Reasonable minds could differ under this record as to proper interpretation of the physical facts.

II. Defendant's second contention re contributory negligence is that since plaintiff failed to look west again after she heard the car she was contributorially negligent as a matter of law. She testified on cross-examination that from the time she heard the car she was hurrying as fast as she could, trying to get out of the way, because she realized there was danger, she

did not turn her head and look for the car because she wanted to be sure she was out of the way.

"Q. I know, but you have no disability of your neck, do you? A. No.

"Q. You could have turned your head and looked, couldn't you, as you were walking or hurrying? A. I was more interested in where I was going than I was with looking for the car to come over the hill.

"Q. The point is, you didn't even turn your head to look for the car as you were hurrying across the road— A. No.

"Q. —that's true, isn't it? A. Yes, I was looking to see that I got out of that side of the road.

"Q. So from the time you first heard the car, what you were trying to do was beat it across to the north half. A. Yes. * * *.''

Upon the basis of the foregoing and similar testimony, defendant argues that plaintiff's entire failure to look and observe the approach of defendant's car, after she knew it was coming toward her, necessarily and directly contributed to the accident.

We do not so construe the record. Plaintiff knew she was in danger. She elected to go north. She concentrated on getting to the north side of the road. The fact that she elected to look straight ahead in attempting this movement does not make her negligent as a matter of law. While hurrying it would be advisable on this gravel country road for an elderly woman to watch her own path.

We have held that a plaintiff pedestrian's failure to keep a constant lookout, or to look again, is not contributory negligence as a matter of law. Lawlor v. Gaylord, supra, and cases cited therein.

Plaintiff argued, we think reasonably, that she had a right to assume the car she heard coming would come over the crest of the hill on its own right side, if she could get over to the left side of the road, the car would stay on its own right side and she would be in a position of safety.

"Perfect care or judgment is not given to mankind, and if a person exposed to danger conducts himself with the caution which may reasonably be expected of a person of ordinary prudence and ordinary presence of mind, he is not to be charged with

fault, even though, as a matter of cool afterthought or mature consideration, he might better have done otherwise." Leinen v. Boettger, 241 Iowa 910, 925, 44 N.W.2d 73.

A jury question was presented.

 III. The court submitted excessive speed as one of the plaintiff's specifications of negligence. Defendant assigns error citing Lawlor v. Gaylord, supra. In this regard the trial court observed.

"Now specification 3.1 is excessive and dangerous speed, and specification 3.5, failing to reduce her speed to a reasonable and proper rate, and also 3.5, stop within the assured clear distance ahead. There is evidence here that this was rolling country. There was a hill here, and this was a country road and there was some loose gravel, and it was inhabited country. And there is evidence that there is 180 feet of skid marks. And still this lady was struck hard enough to give her a comminuted fracture of her left leg. * * * As you go through the country on a gravel road where it is rolling and hilly, and your view is obstructed, when you come over a hill you have to realize that there may be somebody there, just like this, some farmer getting his mail, or something of that kind.

"So I think probably the question of excessive speed and reducing speed to a proper rate are in it. And I also feel, probably that assured clear distance is in it."

We agree. It would seem that this is one of the reasons for section 321.288, Code, 1962:

"The person operating a motor vehicle or motorcycle shall have the same under control and shall reduce the speed to a reasonable and proper rate:

"1. When approaching and passing a person walking in the traveled portion of the public highway. * * *

"3. When approaching and traversing a crossing or intersection of public highways, or a bridge, or a sharp turn, or a curve, or a steep descent, in a public highway."

Instruction No. 10 tells the jury that a motor vehicle shall be driven at a careful and prudent speed, not greater nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions

then existing, also that such vehicle shall not be operated at a speed greater than will prevent the driver to bring it to a stop within the assured clear distance ahead, such driver having the right to assume that all persons using said highway will observe the law. The court did not instruct, as it well might have, that there is a duty on a driver to reduce speed to a reasonable and proper rate as indicated in section 321.288 quoted above. The trial court recognized plaintiff had pleaded failure to reduce speed but stopped short of including it in Instruction No. 10.

Lawlor v. Gaylord, supra, is distinguishable on the issue of defendant's speed. Although this court there held that the issue of excessive speed should not be submitted, that case lacked the evidence of skid marks and did not involve an accident near the crest of a hill.

"Speed limits, signals, and other traffic regulations, whether statutory or otherwise, call for the minimum of care and not the maximum. The circumstances and conditions may be such that the reasonable and ordinary care of the prudent person is not satisfied or fulfilled by mere compliance with the regulations but requires the exercise of more or other care. Whatever precautions ordinary and reasonable care and prudence require for the proper protection of others must be taken even though not exacted by statutory provisions. The care which the law requires must ordinarily be measured and proportioned to the dangers reasonably to be guarded against. A motorist should not operate his vehicle up to the speed limit of the statute, ordinance, or regulation if the circumstances are such that reasonable and ordinary care and prudence require a lesser speed." Richards v. Begenstos, 237 Iowa 398, 408, 21 N.W.2d 23, and cases cited.

Under the factual situation here the court properly instructed on speed and assured clear distance.

■ IV. Plaintiff's third assignment of error involves the court's instruction on the issue of control of the car. The car was driven over the top of a hill in such fashion that it struck a person in plain view crossing the highway 312 feet ahead; the impact occurred on the driver's left side of the road; skid marks show the brakes were applied while the driver was on her own right side but the car skidded in a long arc covering 180 feet of gravel road and ended wholly on the wrong side of the road, the

duty of a driver to have her car under control was a submissible jury issue.

Control means more than being able to stop the car reasonably quickly under the circumstances. It also connotes an ability with reasonable promptness to maneuver "so as to guide and direct its course or movement in the manner willed by the operator, acting as the ordinarily careful and prudent driver would do under similar circumstances." Paulsen v. Haker, 250 Iowa 532, 540, 95 N.W.2d 47. Although the court contented itself with reference in the instruction only to the ability to stop with reasonable quickness, both concepts were present here. The submission of control by defendant driver was necessary and proper.

Reference to the duty to have a car under control on approaching the crest of a hill or grade was not error. As mentioned in Division III, failure to speak of duty to reduce speed approaching such crest was favorable to defendant.

V. In Instruction No. 18 the court told the jury:

"Further regarding plaintiff's third proposition, our law provides that the driver of a car on approaching the crest of a hill or grade shall have the car on the right-hand side of the roadway."

This instruction is limited to the issue of contributory negligence. Defendant's argument that the instruction should have plainly told the jury it dealt with contributory negligence and should have been couched in terms of what plaintiff had the right to assume seems hypertechnical.

Defendant argues in effect that defendant's statutory duty to approach the crest of a hill traveling on her own right side of the road did not give plaintiff the right to assume that defendant's car would remain on the right side of the road for the 312 feet to the point of impact, and that this duty on the part of defendant is wholly immaterial from the standpoint of time and space. Iowa law does not require a motorist to keep his car on the right side of the road at all times, but only under certain described circumstances one of which is when approaching the crest of a hill.

The court refused to instruct on this specification in relation to the charge of primary negligence against defendant but we believe the instruction was proper in relation to contributory negligence. This instruction could refer only to what plaintiff had the right to expect when defendant's car did top the crest of the hill. The court committed no error in giving it.

In answer to defendant's contention, plaintiff with some justification cites Riepe v. Elting, 89 Iowa 82, 86, 56 N.W. 285, 286, 26 L. R. A. 769, 48 Am. St. Rep. 356:

"In the sections of 2 Shearman & Redfield on Negligence cited it is said that, 'it is the universal custom in America for travelers, vehicles, and animals under the charge of man to take the right hand of the road when meeting each other, if it is reasonably practicable to do so * * *.' " See also Lawson v. Fordyce, 237 Iowa 28, 62, 21 N.W.2d 69.

Affirmed.

All JUSTICES concur.