CERNY, APPELLANT, v. DOMER, APPELLEE.

[Cite as Cerny v. Domer, 10 Ohio App. 2d 1.]

(No. 1189—Decided March 29, 1967.)

*Mr. John W. Watters*, for appellant.
*Messrs. Donithen, Michel & Davis*, for appellee.

GUERNSEY, P. J. It is undisputed in evidence that the collision upon which this appeal is based took place during the hours of darkness in the eastbound lane of U. S. Route No. 30S east of Marion, Ohio; that as the plaintiff, Cerny, appellant herein, driving east in that lane, topped the crest of a hill he saw the taillights of the eighteen-foot truck of defendant, Domer, appellee herein, clearly visible in his lane of travel in the road ahead of him; that there was no obstruction to his vision and that he continued to see, or could continue to see, such taillights until immediately before the collision; that the distance from the crest of the hill to the point of collision was at least 700 feet; that from the time when plaintiff sighted defendant's taillights until the moment of the collision the defendant drove his truck east on the highway in the plaintiff's lane of travel at a speed of 35 to 40 miles per hour, slowed down to 5 miles per hour, then to a stop, with the rear end of the truck approximately twelve feet past the east side of a private driveway extending southerly from the south edge of the highway, and then, with only a second's pause, proceeded to back into the driveway and was partially into the driveway with the front end of the truck "approximately 3 to 5 feet on the road at an angle" when the plaintiff's car collided with the left front of the truck; and that from the time the plaintiff sighted the defendant's taillights until plaintiff was two car lengths from defendant's truck, at which time he first became aware that the defendant was backing, the plaintiff did not reduce his speed below the 40 to 50 miles per hour at which he had been traveling.

On this state of facts, and without regard to defendant's negligence, if any, the issue presented by the direction of a verdict for defendant at the close of the plaintiff's evidence

is whether the plaintiff, as a matter of law, was guilty of a violation of the assured-clear-distance-ahead statute contributing to proximately cause the collision. This statutory rule is stated in Section 4511.21, Revised Code, as follows:

"* * * no person shall drive any motor vehicle * * * in and upon any street or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead."

There is no question that, on the other facts here, had the defendant brought his truck to an abrupt stop in the highway and then remained stationary the plaintiff would have been guilty of negligence per se in colliding with him. The distinction here, if there is one, is that the defendant, after stopping, was backing in the same lane of travel toward a driveway to the right side of the highway.

One of the earliest cases respecting the assured-clear-distance-ahead rule is that of *Gumley* v. *Cowman* (1934), 129 Ohio St. 36, wherein the court held:

"2. The present legislative requirement establishes a subjective test whereby a driver is prohibited from operating any motor vehicle in and upon any public road or highway at a rate of speed greater *than will permit him to bring it to a stop within the distance at which he can see a discernible object obstructing his path.*" (Emphasis added.)

In the case of *Hangen* v. *Hadfield* (1939), 135 Ohio St. 281, the Supreme Court held:

"2. A driver who has failed to comply with these provisions of Section 12603, General Code, may excuse such failure and avoid the legal imputation of negligence *per se* by establishing that, *without his fault,* and *because of circumstances over which he had no control, compliance with the law was rendered impossible.* * * *

"3. These provisions of Section 12603, General Code, do not require the driver of a motor vehicle *approaching the crest of a hill* on a public highway to *anticipate* that his proper path will be obstructed by another automobile driven in the opposite direction *in a manner contrary to law.*" (Emphasis added.)

In the case of *Smiley* v. *Arrow Spring Bed Co.* (1941), 138 Ohio St. 81, 133 A. L. R. 960, the Supreme Court held:

"1. Section 12603, General Code, is a safety measure which,

to accomplish its purpose, must be applied *according to its clear and unambiguous language.*

"2. To comply with the assured-clear-distance-ahead provision of Section 12603, General Code, the driver of a motor vehicle must not operate it at a greater speed than will permit him to bring it to a stop *within the distance between his motor vehicle and a discernible object obstructing his path or line of travel,* unless such assured clear distance ahead is, *without his fault, suddenly cut down or lessened by the entrance,* within such clear distance ahead and into his path or line of travel, of some obstruction which renders him unable, in the exercise of ordinary care, to avoid colliding therewith." (Emphasis added.)

In the case of *Bickel* v. *American Can Co.* (1950), 154 Ohio St. 380, the Supreme Court held that under the assured-clear-distance-ahead rule "there is no distinction to be made with reference to a discernible object within the assured clear distance, based upon whether that object is moving at a normal speed, a slow speed, or is static."

The Supreme Court has never specifically passed on the application of the assured-clear-distance-ahead rule to a backing car in the same lane of travel. However, in an analogous situation, a road grader moving slowly toward the person charged with the duty of adhering to the rule and in his lane of travel, the Court of Appeals for Summit County, in *Carpenter* v. *McCourt Construction Co.* (1957), 106 Ohio App. 67, held the trial court should have granted a motion for judgment for the defendant made at the close of all the evidence, because the grader was located ahead of the plaintiff in his lane of travel, was reasonably discernible since he saw it 150 to 200 feet ahead of him, and "at the time he first saw the grader he could have stopped his motorcycle before colliding therewith." The Supreme Court overruled a motion to certify, in No. 35224, October 9, 1957.

Here the defendant's truck was located ahead of the plaintiff in his lane of travel at all times here pertinent, it was discernible because the plaintiff saw its taillights from the moment he topped the crest of the hill until the point of the collision at least 700 feet away, and there is no question that plaintiff could have stopped his car within that 700 feet distance before colliding with the defendant's truck. This case is distinguish-

able from that of *Hangen* v. *Hadfield*, 135 Ohio St. 281, because *anticipation* is not here involved. Here the defendant's truck was plainly visible for a distance ahead fully sufficient to permit the plaintiff to stop his vehicle before colliding with defendant.

The rule of the statute, that "no person shall drive any motor vehicle * * * in and upon any street or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead," was literally applicable to plaintiff, and he did not comply with that rule, making him negligent *per se*. To excuse such failure and avoid the legal imputation of negligence the burden was upon plaintiff, and not upon defendant, to establish that the assured clear distance ahead was, without his fault, *suddenly cut down* or lessened *by the entrance, within such clear distance ahead* and *into his path or line of travel*, of some obstruction which rendered him unable, in the exercise of ordinary care, to avoid colliding therewith. *Smiley* v. *The Arrow Spring Bed Co.*, 138 Ohio St. 81; *Lehman* v. *Haynam* (1956), 164 Ohio St. 595; *Masterana* v. *Cashner* (1959), 114 Ohio App. 379. Defendant here was always in the plaintiff's path or line of travel. By backing a distance of about 30 feet (the length of his truck plus the distance from the rear thereof to the east edge of the driveway) plaintiff's assured clear distance ahead was not *suddenly* cut down or lessened by defendant's action. Plaintiff was closing on defendant at the rate of at least 40 miles per hour, or at the rate of 58.66 feet per second, and made no attempt in the approximately 11 to 12 seconds in which it would take him to move 700 feet to stop or even to slow down until within two car lengths of defendant's vehicle. Plaintiff was not without fault. Plaintiff has failed to submit any evidence of probative value excusing his failure to comply with the statute.

The direction of the verdict for the defendant at the close of plaintiff's evidence was proper, and the judgment of the Common Pleas Court is affirmed.

*Judgment affirmed.*

MIDDLETON, J., concurs.

YOUNGER, J., dissenting. I must dissent from the judgment of affirmance in this case because in my opinion a question of fact is presented for determination by the jury under proper instructions of the court. In other words, I do not believe, under the evidence here presented, that the plaintiff was guilty of contributory negligence as a matter of law in failing to drive his car at such a speed that he could bring it to a stop within the assured clear distance ahead.

Before getting to this issue, the court, in my opinion, committed prejudicial error in finding the plaintiff guilty of contributory negligence as a matter of law for failure to keep a lookout. The plaintiff testified both on direct and on cross-examination on numerous occasions that he could see and did see the taillights of the defendant's truck from the crest of the hill to the impact. After testifying that he could and did see the taillights, the defendant was asked upon cross-examination as follows:

"Q. If you didn't, you were looking at something else, were talking, or something. Is that correct? A. You mean, if I didn't see the taillights of the vehicle that I was looking some other place?

"Q. Yes, looking, or talking, or something of that kind. A. Yes."

The court in directing a verdict stated to the jury as follows:

"Now, you will remember that on cross-examination by Mr. Michel of the plaintiff here—and I think it was strictly honest—I personally didn't see any deviation, at least any corroborated deviation, but he was asked: Was there anything to obstruct your view as you hit the top of the rise out there, the crest? Was there anything to obstruct your view on down there where the truck was located? And his answer was 'No.' Could you have seen his lights? And he said 'Yes.' If you didn't see something like this, then you were talking or doing something else. If you remember, that was his testimony. And he said, 'yes.' 'And you could have seen the taillights?' *And he said something about doing something else,* so if he had looked the court comes to the conclusion that if he had looked, and we have the requirements that we must look and we must see what we

should have seen. Under these many cases, I am of the opinion, as a matter of law, that the plaintiff was guilty of contributory negligence.'' (Emphasis added.)

The plaintiff did not say ''something about doing something else.'' The plaintiff stated on a number of occasions that he could and did see these taillights from the crest of the hill to the point of the accident, approximately 700 feet. The last above-quoted question put by counsel to the plaintiff is a hypothetical question. The question really means, ''assuming that you did not see the taillights, then you must have been looking or talking or something of that kind.'' The answer the plaintiff gave to this question of ''yes'' was the only answer he—or anybody else—could have given to such a question.

It cannot be assumed that because the accident happened the plaintiff did not see the taillights or did not look. The plaintiff did not admit that he did not see the taillights or that he did not look. Therefore, whether the plaintiff saw the taillights or looked is a question of fact for the jury to decide, and in assuming that the plaintiff did not look, which assumption is based upon a hypothetical question to the plaintiff and is contrary to the direct and positive testimony of the plaintiff in all questions put to him before the hypothetical question, the court invaded the province of the jury and decided a question of fact.

The ''assured clear distance ahead'' is defined in *Smiley* v. *Arrow Spring Bed Co.*, 138 Ohio St. 81, at page 84, as follows:

''* * * The 'assured clear distance ahead,' as used in the statute, must be the distance or space between the motor vehicle of the motorist and any discernible obstruction or any limit of vision ahead of him on the highway. * * *''

When the defendant stopped his car in the plaintiff's lane of travel, plaintiff's assured clear distance ahead was from his vehicle to the taillights or rear end of the defendant's truck. When the defendant started to back up, the plaintiff's assured clear distance ahead was cut down by the backing truck, and it must be remembered that as the defendant's truck was being backed it was necessary for the front end of the defendant's truck to travel at least thirty feet to the east line of the driveway, and then to proceed further or occupy plaintiff's lane further, until the front end could be placed in position to follow

the rear end of defendant's truck into the driveway. In other words, the front end of the defendant's truck traveled backwards a distance of at least thirty-five feet.

Assuming the defendant's truck was traveling 5 miles an hour while backing it would take—at 7.3 feet per second—about 5 seconds to travel this distance. Actually it would take longer, after the truck was stopped, to change to reverse and start backwards from a standing position. If the plaintiff traveled 50 miles an hour from the crest of the hill to the point of impact it would take him less than 10 seconds and, at 40 miles an hour it would take 12 seconds. Plaintiff and the defendant each traveled the 700 feet from the crest of the hill to the point of impact in approximately 10 or 12 seconds, with the plaintiff gaining on the defendant in the meantime. Just what the distance between the two vehicles was at the moment the defendant brought his truck to a stop is not definitely established by the evidence but it was certainly much less than the 700 feet that each had to travel, and during the last 5 seconds that the plaintiff was traveling the defendant was backing up in plaintiff's lane of travel. The speed at which the defendant backed his truck is not directly established by the evidence. He may have been backing at less than 5 miles an hour and thereby have taken more time away from the plaintiff.

In my opinion the questions presented are questions of fact to be determined by the jury. I would reverse and remand for a new trial.